United States Court of Appeals
Fifth Circuit

**F I L E D**

June 12, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-30731

_____

BOBBY E GUIMBELLOT; YVONNE ZODUN,

Plaintiffs-Appellants,

versus

ELODIE ANN ROWELL; DANELLE HEATHMAN-SMITH; DON H JOHNSON; TOMECA
WRIGHT; CECIL DESKINS; JOHNSON & PLACKE, LLP; JOHN AND JANE DOES 1–70,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
2:04-CV-1318

_____

Before REAVLEY, CLEMENT, and PRADO Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Bobby Guimbellot and Yvonne Zodun brought a defamation action against Elodie Ann Rowell

and the other defendants-appellees, and the district court granted summary judgment in the

defendants' favor. For the reasons that follow, we affirm.

## I. FACTS AND PROCEEDINGS

In October 2002, Rowell and other class-action plaintiffs filed suit in Louisiana state court

against the Houma Building Partnership alleging that, because of negligence by the partnership, which

_____

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and
is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

owns the Houma Atrium Building, the residents were exposed to mold and their health suffered. The class-action plaintiffs were employees of one of the businesses located in the building and parents of the children who attended a daycare also located in the building. The law firm of Johnson and Placke, L.L.P., served as plaintiffs' counsel. Following the distribution of flyers and letters to tenants in the building, Guimbellot and Zodun, partners in the Houma Building Partnership, brought the instant suit in federal court against Rowell, the other class-action plaintiffs, and Johnson and Placke (collectively, "Rowell"). Guimbellot and Zodun complained that Rowell engaged in a campaign to defame them.

The allegedly defamatory statements are contained in three documents: (1) a notice letter from Johnson and Placke about an informational meeting regarding the details of the mold detected in the building; (2) a flyer entitled "Toxic Mold Exposure!" providing notification of the same meeting; and (3) an informational sheet entitled "Toxic Mold," distributed at the meeting. The notice letter from Johnson and Placke stated that "toxic levels of mold have been detected in your building" and that a "class action lawsuit is being filed against the building manager and insurance company." The informational sheet provided:

> Legal representation is HIGHLY RECOMMENDED. Building owners and managers are often resistant to admitting there is a problem because they will be required to pay for the clean up and the medical costs incurred by those exposed. You may have the RIGHT to be compensated for the damages if you suffer as a result of the neglect of building owners and managers. If you have any of the referenced symptoms, you should contact an attorney.

In June 2005, the district court granted Rowell's motion for summary judgment. The district court found the informational sheet's reference to "building owners and managers" to be informational only and, therefore, not defamatory. At the time of the summary judgment order, Guimbellot and Zodun's discovery request for production of the names of people who had attended

2

the informational meeting was pending. Guimbellot and Zodun sought this information in connection with their oral defamation claim. In the summary judgment order, the district court stated that the disposition of the case rendered the discovery request moot. On appeal, Guimbellot and Zodun argue that summary judgment was improper and that the district court abused its discretion by not ruling on the discovery request.

## II. DISCUSSION

### A. Defamation Claim

This court reviews the district court's grant of summary judgment de novo. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotations and citation omitted). In making this determination, this court reviews the facts in the light most favorable to the nonmoving party. *Tarver v. City of Edna*, 410 F.3d 745, 749 (5th Cir. 2005). If the moving party meets its burden of showing an absence of genuine issue of material fact, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

To maintain a defamation action under Louisiana law, a plaintiff must prove five elements: "(1) defamatory words; (2) publication to a person other than the one defamed; (3) falsity; (4) malice; and (5) resulting injury." *Bell v. Rogers*, 29,757 (La. App. 2 Cir. 8/20/97); 698 So. 2d 749, 753 (citing *Brannan v. Wyeth Labs. Inc.*, 526 So. 2d 1101, 1105 (La. 1988)). "A defamatory communication is one which tends to harm a person's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Guilbeaux v.*

3

*Times of Acadiana, Inc*., 94-1270 (La. App. 3 Cir. 8/9/95); 661 So. 2d 1027, 1031. To be actionable, the defamatory communication must be "'of and concerning' the plaintiff or, directly or indirectly, cast a personal reflection on the plaintiff." *Gugliuzza v. KCMC, Inc*., 606 So. 2d 790, 791 (La. 1992). The cause of action fails if any one of the elements is lacking. *Bell*, 698 So. 2d at 753.

"[W]hether a communication is capable of a particular meaning and whether that meaning is defamatory is a question for the court." *Guilbeaux*, 661 So. 2d at 1031 (citing *Sassone v. Elder*, 626 So. 2d 345, 352 (La. 1993)). In answering this question, the court determines "whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense." *Id*. *See also Sassone*, 626 So. 2d at 352. The court considers "the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener" to determine whether the communication is "*objectively* capable of a defamatory meaning." *Bell*, 698 So. 2d at 754. If the court resolves this inquiry in the plaintiff's favor, then "the recipient's *subjective* understanding or perception becomes a factual issue for the jury." *Id*. *See also Sassone*, 626 So. 2d at 352 n.9. Otherwise, the statement is not defamatory as a matter of law.

We agree with the district court that the statements at issue are not capable of a defamatory meaning. The statements in the informational letter describe typical litigant behavior and also a plaintiff's rights in the context of a pending lawsuit. The attorneys were attempting to sell their services. The intended effect on the mind of an average reader was to heighten the reader's awareness of his or her legal rights and, if the reader had symptoms, persuade the reader to join the lawsuit. The statements about building owners and managers in general were not intended as an attack on the personal reputations of Guimbellot and Zodun in particular. Unable to show the

4

presence of defamatory words, Guimbellot and Zodun have not set forth a prima facie case of defamation. Accordingly, summary judgment was proper.

Nonetheless, on appeal, Guimbellot and Zodun argue: (1) that the district court, in determining that the statements were not defamatory, addressed a factual issue reserved for the jury; (2) that the group defamation doctrine should have been applied; and (3) that the totality of the circumstances were not considered. We find these arguments unpersuasive. First, Louisiana law is clear that courts make the initial inquiry whether words are objectively capable of defamatory meaning. *See Guilbeaux*, 661 So. 2d at 1031. Second, while Louisiana courts recognize the group defamation doctrine, the doctrine is not applicable here because no ascertainable group has been mentioned in a defamatory context. The statements at issue discuss building owners and managers in general and do not refer to a specific, ascertainable entity. *See Bujol v. Ward*, 00-1393 (La. App. 5 Cir. 1/30/01); 778 So. 2d 1175, 1177; *Levert v. Daily States Publishing Co.*, 49 So. 206 (La. 1909). Third, Guimbellot and Zodun urge that the totality of circumstances should be considered, which we understand as an argument that the statements must be viewed in context. *See McConathy v. Ungar*, 33,368 (La. App. 2 Cir. 8/23/00); 765 So. 2d 1214, 1217 ("The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous but from the context as well."). For reasons already stated, we hold that the statements, viewed in context, are not capable of defamatory meaning.

**B. Discovery Request**

Guimbellot and Zodun contend that they did not have the opportunity to develop their oral defamation claim. We review a district court's decision to cut off discovery in order to rule on a summary judgment motion for abuse of discretion. *Brown v. Miss. Valley State Univ.*, 311 F.3d 328,

332–33 (5th Cir. 2002) (citing *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000), and *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1441 (5th Cir. 1993)).

At the summary judgment hearing, Guimbellot and Zodun indicated that their oral defamation claim was based on the same nondefamatory language found in the written statements. The district court correctly determined that the written statements were not actionable. As a result, the district court did not abuse its discretion by terminating discovery in order to rule on the summary judgment motion.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.